PALO PINTO COUNTY v. R. M. GANO & SONS.

(Case No. 1468.)

1. COUNTY SCHOOL LANDS.— The counties are trustees for the county school lands, in the manner and for the purposes declared in the constitution. As such they may sell or dispose of them in such manner as the county commissioners' court may determine.

2. SAME.— Where the county commissioners' court, under their order, contracted with a party to subdivide school lands into tracts of one hundred and sixty acres, after personal inspection by the contractor, who was, according to their quality, to designate them as of first, second and third class lands, and after surveying them was to make a sworn report, *held*, that the contract involved a personal trust which was not assignable, and, in the absence of allegations of fraud or mistake, parol evidence was not admissible to alter that result.

APPEAL from Palo Pinto.   Tried below before the Hon. T. L. Nugent.

Appellees instituted this suit against appellant, alleging in substance that the commissioners' court of the county, on the 16th day of December, 1876, made an order employing and contracting with S. P. Haynes, Wm. Veal and John H. Caruthers, to survey into blocks of one hundred and sixty acres, and resulting fractional blocks, the four leagues of school land belonging to Palo Pinto county, situated in the counties of Archer and Wichita, and to map the same.   And also to classify the lands into first, second and third classes, the report of the classification to be under oath; the entire work to be done within six months from the time the order was made; for which service the court agreed to convey them one-fourth of the land.   That in March, 1877, the contractors employed appellees to do the work, agreeing to give them a portion of the land which they were to receive from the county; and that they, at great expense, did the work in strict conformity to the order, and made report thereof, sworn to by one of the appellees, within the time named by the order; that the court deferred action upon the report from time to time, notwithstanding Caruthers and Veal urged action; that afterwards the contractors assigned to appellees all their rights under the contract, and that the court refused to make them a deed in accordance with the agreement.   Alleging, also, that the contract was not one imposing special confidence or trust in the contractors, and that it was not so understood by the commissioners' court.

Prayer for decree for performance and in the alternative for the reasonable value of their services.

Appellant answered by general and special exceptions, among the latter, that the contract was *ultra vires;* that the court had no power to convey the land or dispose of it in that way.   This was sustained and it was not made a question on appeal.   Another exception was that the contract as set out in the petition was one of personal confidence or trust, and no assignment of it or any delegation thereunder could be made.   This was overruled and was assigned as error.   Appellant answered by general denial and various special defenses; among them that the contract was upon personal confidence and trust; and also that the court on the 16th day of May, 1877, made and entered an order upon its minutes rescinding the former order, on the ground that the court had been informed that the contractors had employed others to perform the services.

Verdict for appellees for $864, and judgment accordingly.

Upon the trial the court admitted evidence as to whether the employment was upon personal confidence or trust, and by the charge submitted that question to the jury as one of fact, and refused charges instructing as to the legal effect of the order in that respect.

*McCall & McCall*, for appellant, cited: Const. 1876, art. 7, § 6; Rev. Code, p. 18; Rev. Code, p. 581, § 4036; also § 681; 1 Dillon on Mun. Corp., §§ 381, 383, 384; 2 Dillon, § 749; Brice's Ultra Vires, pp. 607–614; The Northwestern Company *v.* Shaw, 19 Am. Rep., 781; Whitney Davis Co. *v.* Barlow, 20 Am. Rep., 509; Brady *v.* Major, 2 Boreo, 1 N. Y., 173.

*E. P. Nicholson* and *W. B. Gano*, for appellees, cited: Smith *v.* Sublett, 28 Tex., 170, 172; Story on Agency, §§ 14, 15, 201, 387, 388 (8th ed.); Wood *v.* McMeans, 23 Tex., 484; Eccles *v.* Daniels, 16 Tex., 136; Sublett *v.* McKinney, 19 Tex., 446; R. S., art. 677.

WATTS, J. COM. APP.— But one question presented by the record will be considered, as it is believed that question disposes of the appeal. That question arises in overruling exceptions to the petition, in the admission of evidence over objections, and in giving and refusing charges.

It is claimed by appellant that the purported contract upon which the suit was brought was made upon personal trust and confidence in Haynes, Veal and Caruthers, and therefore could not be assigned to another without the consent of the appellant. That such is the legal effect of the contract and should have been so declared in the charge to the jury.

While the constitution vests title in the respective counties as to the four leagues of land usually known as county school land, it declares that it is alone in trust for the benefit of public schools in the counties respectively. In short, that the counties are trustees holding this land in the manner and for the purposes declared in the constitution. Each county is authorized to sell or dispose of its lands in whole or in part, in manner to be provided by the commissioners' court. And it is declared that " Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the state of Texas, or of the United States, and only the interest thereon to be used and expended annually."

Preparatory to a disposition of these lands held by appellant, the

commissioners' court thereof deemed it proper to have the same surveyed into blocks of one hundred and sixty acres each, and such fractional blocks as would necessarily result from such survey, to have these sections mapped, numbered and classified into first, second and third class lands, the report of the classification to be under oath.

The commissioners' court made the order contracting with the parties therein named to do the work in the manner stated. There is nothing in the order about allowing them to substitute others to perform the labor, or to authorize them to assign the contract, and there is no ambiguity in the terms of the order, or asserted mistake that would require parol evidence to explain or establish.

The intention respecting the classification is evident. It would not be practicable for the commissioners' court, in selling these lands, to go in person upon them, examine, classify, and fix a price upon each block. But the court required the classification to be made under oath, so that in fixing terms and price it might rely upon the classification thus made. In short, this is the method the court adopted to inform itself in reference to the quality and character of the land, so that it might faithfully and advisedly execute the trust. The importance, then, of a correct and accurate classification of the land, when its object is considered, is obvious. And it is also apparent that such a classification would require the exercise of sound judgment and discretion, taking into consideration the character of the soil and the location of the respective blocks with reference to water, timber and other conveniences. The mere surveying, that is, running the lines, establishing the corners and making the maps, is entirely different in character. These things are done by rule, and as well by one efficient surveyor as another.

In the execution of so important a trust it could not be expected that the court could or would have relied upon the judgment of any party that the contractors might see proper to select to make the required classification. On the contrary, the terms of the order, when considered with reference to the subject matter of the contract, import a personal confidence or trust imposed in the parties selected to perform this duty. For had these parties died without entering upon the performance of the contract, it would seem to admit of no doubt that the right to perform the duty under it would not pass to their heirs or legal representatives. And while living they could not, without the consent of the court, given as such, and in the usual mode, have delegated such a right to others. Ewell's Evans on Agency, 58.

The legal effect of the order was that the employment was one of personal confidence and trust, and, in the absence of allegations of fraud or mistake, parol evidence would not be admissible to alter, vary or change that result.

If, however, it should be made to appear that the court had adopted the work of appellees by using it in the disposition of the land, it would seem that appellees would then be entitled to the reasonable value of their services.

Our conclusion is that the court erred in the several rulings as indicated, and that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted October 30, 1883.]